# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Karen Wells and Andre Locke, as co-trustees for the next of kin of Amir Rahkare Locke, deceased, | Case No. 23-CV-273 (WMW/JFD) |
| Plaintiffs, | |
| v. | **ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| Mark Hanneman, in his individual capacity as a Minneapolis police officer, and the City of Minneapolis, | **JURY TRIAL DEMANDED** |
| Defendants. | |

For their Answer to Plaintiffs' First Amended Complaint, Defendants Mark Hanneman and the City of Minneapolis (hereinafter "Defendants") state and allege as follows.  Except as admitted, qualified or otherwise pleaded herein, Defendants deny each and every allegation, matter, and thing in Plaintiffs' First Amended Complaint.

Defendants state that Plaintiffs' First Amended Complaint contains section headers and footnotes that are not susceptible to a responsive pleading.  To the extent that the material in the section headers and footnotes can be construed to contain any allegations against the Defendants, those allegations, if any, are denied.

For ease of reference, Defendants identify the following abbreviations:

1.      Karen Wells and Andre Locke ("Plaintiffs");

2.      Mark Hanneman ("Hanneman");

3.      City of Minneapolis ("City");

4.      Minneapolis Police Department ("MPD");

5.      St. Paul Police Department ("SPPD");

6.      Amir Locke ("Locke");

7.      Plaintiffs' Complaint Exhibit A, Minnesota Department of Human Rights, Investigation ("MDHR") into the City of Minneapolis and the Minneapolis Police Department Report ("Complaint Ex. A");

8.      Plaintiffs' Complaint Exhibit B; MPD Policy and Procedure Chapter 9-300 ("Complaint Ex. B");

9.      Plaintiffs' Complaint Exhibit C; Email from Mychal Vlatkovich ("Complaint Ex. C");

10.     Plaintiffs' Amended Complaint Exhibit E; Investigation of the City of Minneapolis and the Minneapolis Police Department ("DOJ Investigation");

11.     Bolero Flats Apartments located at 1117 South Marquette Avenue in Minneapolis ("Bolero").

## INTRODUCTION

1.      Defendants admit Officer Hanneman shot and killed Locke on February 2, 2022. Admit that the SWAT team executed a no-knock warrant where Locke was staying in the early morning hours. Deny the remaining allegations.

2.      Admit Hanneman shot and killed Locke less than 10 seconds after SWAT entered the apartment. Admit Hanneman gave a statement to investigators in lieu of an oral interview. Are without information sufficient to admit or deny what Rob Doar stated or why or based on what information he had when he made the alleged statement, and therefore deny it. Admit Locke was armed. Deny the remaining allegations.

2

3.      Admit Hanneman shot Locke while on the couch largely covered by a blanket only 10 seconds after SWAT made entry. Are without information sufficient to admit or deny whether Locke never had his finger off the trigger of the gun, and therefore deny the remaining allegations.

4.      Are without information sufficient to admit or deny whether MPD only executed no-knock warrants in homes of color and not once in house of non-Hispanic Whites in the four months leading up to Locke's death, and therefore deny it. Deny the remaining allegations.

5.      Admit Plaintiffs bring this cause of action. Deny the claims have any merit.

## JURISDICTION AND VENUE

6.      Admit the allegations in ¶6.

7.      Admit the allegations in ¶7.

8.      Admit the allegations in ¶8.

9.      Admit Defendants had actual notice that Plaintiffs would bring a claim within a year of Locke's death. Deny the facts are sufficient.

## PARTIES

10.     Are without information sufficient to admit or deny the allegations in ¶ 10, and therefore deny them.

11.     Are without information sufficient to admit or deny the allegations in ¶11, and therefore deny them.

12.     Admit, based on information and belief, the allegations in ¶12.

13.     Admit the allegations in ¶13.

14.     Admit the allegations in ¶14.

15.     Are without information sufficient to admit or deny the allegations in ¶15 due to its vagueness, and therefore deny it.  Admit Hanneman was acting within the course and scope of his employment when he shot Locke and that Minneapolis would be vicariously liable for his actions related to the shooting of Locke if Hanneman was found liable.

## FACTS

**A.     Minneapolis's notice of MPD's history of excessive force, particularly against Black victims and other victims of color.**

16.     Admit the allegations in ¶16.

17.     The City admits that Catrina Johnson ("Johnson") alleged an unlawful use of force against her arising from a 2013 incident; admits that Johnson used a cane at the time of the incident; admits that an officer held Johnson to the ground in the prone position until additional officers arrived because he had just suffered a severe leg injury and his partner was occupied controlling Johnson's son who had resisted arrest; and admits that it settled the lawsuit for $50,000, which included payment for Johnson's attorney's fees through discovery and an

appeal to the Eighth Circuit Court of Appeals. The City is without sufficient information to determine whether Johnson was or is disabled, and that allegation is therefore denied. The City denies all other allegations in the paragraph. State affirmatively that the City expressly denied liability.

18.     Admit the City entered into a settlement agreement with Mr. Alfred Flowers ("Flowers").  Admit Mr. Flowers is a Black man.  Admit Mr. Flowers' suit alleges an MPD officer suddenly grabbed him by his throat, choked him and threw him to the ground and handcuffed him. Deny that excessive force was used after Mr. Flowers had been fully secured in handcuffs; deny that Mr. Flowers was not physically resisting.  Admit Flowers filed suit against the City in 2017 making the allegations stated. Deny that after handcuffing Mr. Flowers, an MPD officer punched him in the head, following which several other officers entered the room and proceeded to kick and stomp on Mr. Flowers while he was handcuffed and lying on the ground. Deny the remaining allegations. State affirmatively that the City denied liability.

19.     Deny the City had notice of an incident in which MPD officers used excessive force after Lamar Allen Ferguson ("Ferguson") had been fully secured in handcuffs and not physically resisting.  Admit Ferguson filed a lawsuit with the allegations listed.  Deny an officer lifted Ferguson's head off of the ground and

kicked him directly in his mouth. Admit the remaining allegations. State affirmatively that the City denied liability.

20.     Admit that a case by the name of *Wagad v. City of Minneapolis,* 17-CV-5239, was brought against the City of Minneapolis and former Officer Christopher Reiter; the pleadings in the matter read as they do and speak for themselves; further admit that a settlement was reached in which neither the City of Minneapolis, nor Officer Reiter admitted any liability or the facts alleged in the First Amended Complaint; deny that any form of fact finding was ever made, nor was liability ever determined in the matter; deny all remaining allegations in paragraph 20 of the First Amended Complaint. State affirmatively that the City denied liability.

21.     Admit multiple officers used force against Jeremiah Jermaine Thomas ("Thomas"). Admit the City entered into a settlement agreement which resolved his claims against the City. Deny an officer drop-kicked Thomas. Admit he was kicked, and kneed.  Deny the officers joined in and immediately did anything in response to another officer's actions. Admit he suffered a punctured lung, internal bleeding, broken ribs.  Admit, based on information and belief he suffered bruises and scratches. Deny the injuries were based on excessive force. State affirmatively that the City denied liability.

6

22.     Deny the City had notice of a 2018 incident in which multiple officers used excessive and entirely unjustified force against Rico McKinnies ("McKinnies") during the course of a traffic stop.  Admit reasonable force was used on McKinnies when he was handcuffed.  Admit the City entered into a settlement agreement with McKinnies which resolved his claims.  Are without information sufficient to admit or deny who McKinnies is related to and therefore deny it. State affirmatively that the City denied liability.

23.     Admit Mr. Jaleel Stallings ("Stallings") was a Black man who took to the streets five days after George Floyd's murder.   Are without sufficient information to admit or deny whether Stallings was protesting. Deny he was protesting when he shot at MPD SWAT officers. Deny the remaining allegations.

24.     Admit MPD SWAT officers used excessive force on Stallings.  Deny that the use of less-lethals was unlawful.  State the allegation is unclear as to the timing of Stallings surrender and discarding of his weapon.  Are without information sufficient to admit or deny the remaining allegations, and therefore deny them.

25.     Admit Stallings was acquitted by a jury. Deny that he was wrongfully charged as he did shoot at a moving vehicle full of occupants.  That he pled self-defense and was acquitted does not mean he was wrongfully charged. Admit Minneapolis paid Stallings $1,500,000 to resolve Stallings civil lawsuit.  Admit that

Stallings was tried, as is the custom after being charged with a crime unless a plea deal is struck or the charges are thrown out. Admit that after Stallings' jury trial Stetson was criminally charged for his assault of Stallings. State that whether it is found to be unlawful will be decided by a jury, and not these answering Defendants. Admit Stallings is a Black man.

26.    Admit each incident listed involved more than one officer. Deny the remaining claims.

27.    Admit the City has paid significant sums of money for deaths caused by its officers. Deny the City was forced to do so. Deny all of the deaths were unlawful.

28.    Admit the allegations in Paragraph ¶28, based on information and belief.

29.    Admit the City paid $3 million to settle the David Smith ("Smith") death, with approximately one third going to attorneys' fees. Admit the officers were not disciplined. Admit the City agreed to provide officers with additional training on positional asphyxia. Deny the risks of prone restraint were well known or that any use of force was not constitutional. Admit that Mr. Smith was a black man. State affirmatively that the City denied liability.

30.     Admit the City settled the shooting death of Mr. Jamar Clark ("Clark").  State the term "significant" is too vague to be susceptible to responsive pleading, and therefore deny it.  State affirmatively that the City denied liability.

31.     Admit they City approved a settlement with the family of Terrance Franklin ("Franklin") who was shot by an MPD officer.  State the term "significant" is too vague to be susceptible to responsive pleading, and therefore deny it. Admit Mr. Franklin was a black man. State affirmatively that the City denied liability.

32.     State "stood still" is too vague to be susceptible to responsive pleading and is therefore denied. Admit the remaining allegations.

**B.     Minneapolis's notice of MPD's history of excessive force when executing no-knock warrants, particularly against Black victims and other victims of color.**

33.     Admit the allegations in ¶33.

34.     Admit the allegations in ¶34.

35.     Deny the allegations in ¶35.  State affirmatively, the seeking of a no-knock warrant is established with the individual facts of a particular need to execute the warrant, rather than a pie chart percentage figure determination.

36.     Are without information sufficient to admit or deny the allegations in ¶36, and therefore deny them.

37.     Are without information sufficient to admit or deny the allegations in ¶37, and therefor deny them.

38.     State the term "reckoning" is vague and therefore not susceptible to responsive pleading.  To the extent a response is required, it is therefore denied.

39.     Are without information to admit or deny the allegations in ¶ 39, and therefore deny them.

40.     Deny the allegations in ¶40.  State affirmatively that each warrant executed has its own risks such that a generalized statement regarding their safety is not possible.

41.     State the term "notice" is vague and not susceptible to responsive pleading.  To the extent it is it is denied.  State affirmatively that the City learned in 2007 that MPD SWAT officers conducted a no-knock warrant on the dwelling of Yee Moua ("Moua") and Vang Khang ("Khang") while children were in the house. Admit Khang fired three shots at MPD officers and that MPD fired more than 20 shots.  Admit no one was killed. Admit the MPD chief stated that MPD swat had obtained a tip from an informant that gang members were at the address. Deny the MPD Chief stated they were Black.  State affirmatively that the girlfriend of a known gang member of the Rolling 60's Crips reported to officers that her boyfriend threatened her with a gun and that it was in his home.  Admit MPD secured a no-knock warrant.  Deny they "broke in." Admit their intent was to

10

locate the weapons. State affirmatively that the informant gave the officers the wrong address. State affirmatively the officers did not know that at the time they executed the warrant. Admit the Khang family is Hmong. Admit Minneapolis settled with the family and also agreed to appoint a police liaison to the Hmong Community and increase efforts to recruit more Hmong officers. State the term "large" is too vague to be susceptible to responsive pleading, and therefore is denied. Are without information sufficient to admit or deny what Khang believed was happening, and therefore deny it. State affirmatively that the City denied liability.

42.     State the term "notice" is vague and not susceptible to responsive pleading. To the extent it is it is denied. State affirmatively that the City had notice of allegations that in February 2010 MPD officers conducted a no knock warrant on a home where Rickia Russell ("Russell") was present. Are without information sufficient to admit or deny whether she was innocently residing, and therefore deny it. Admit an officer threw a flashbang into the home and it accidently went off near Ms. Russell resulting in severe third-degree burns to Ms. Russell's calf. Are without information sufficient to admit or deny whether it was both calves, and therefore deny it. Deny Minneapolis paid $1 million for its officers' conduct toward Ms. Russell. Admit no officer was disciplined for their conduct. State "toward Ms. Russell" is vague and not susceptible to responsive pleading. To the

11

extent responsive pleading is required, it is denied. Admit Ms. Russell is a Black woman. State affirmatively that the City denied liability.

43.     State the term "notice" is vague and not susceptible to responsive pleading. To the extent it is it is denied. State affirmatively that the City had notice of allegations of a 2016 incident wherein MPD SWAT officers obtained a no-knock warrant for Tomas Garcia-Orihuela's ("Garcia-Orihuela") home based on information provided by a confidential informant. Admit the officers shot and killed the pitbull dog. Deny they did so immediately and deny that the dog did not attempt to attack them. Admit Mr. Garcia-Orihuela brought a suit against the City and made the allegations listed in ¶43. Deny the remaining allegations.

44.     Are without information sufficient to admit or deny whether the dog charged or threatened the officers, and therefore deny it. Admit the remaining allegations.

45.     Deny the allegations in ¶45.

46.     Deny the allegations in ¶46.

## C.     Minneapolis's notice that Hanneman was likely to commit misconduct and violate constitutional rights.

47.     Admit the allegations in ¶47.

48.     Admit the allegations in ¶48.

49.     State the allegations are vague as to time.  Deny Hanneman had four citizen complaints.   State affirmatively that Hanneman had four matters investigated, including this incident.

50.     State the judicial order speaks for itself.  To the extent it doesn't, Defendants deny the order found the seizure was unconstitutional. Admit the remaining allegations are delineated in the Order.

51.     Deny the seizure was illegal. Admit the occupant of the house during the execution of the search warrant was not the subject of the search warrant. Admit the pat search incident to lawful detainment was found to be unconstitutional.

52.     Admit the opinion suggests that, but deny the opinion accurately reflects, his knowledge of policy or the Fourth Amendment.

53.     States the opinion speaks for itself.  To the extent it does not, the term "reflects" is vague and not susceptible to responsive pleading.  To the extent it is, it is denied.

54.     Admit the allegations in ¶54.

55.     Deny the allegations in ¶55.

**D.    Minneapolis's supposed ban on no-knock warrants.**

56.     Admit the allegations in ¶56.

57.     State the term "trumpeted" is vague and not susceptible to responsive pleading.  To the extent it is, it is denied.  Admit the remaining allegations in ¶57.

58.     Deny the allegations in ¶58.

59.     Admit the allegations in ¶59.  State affirmatively that changed policy required officers to announce their presence and purpose before crossing the threshold, which is not required in an unannounced, colloquially referred to as a no knock, warrant. State affirmatively that officers were allowed to apply for an unannounced entry warrant but were required by policy to actually announce their presence and purpose prior to crossing the threshold.

60.     Admit the Mayor did promote the ban on unannounced warrants and that he did publicly apologize for the execution of an unannounced warrant by Anoka County sheriffs at the request of MPD Sergeant Swierzewski on February 11, 2021.

61.     Are without information sufficient to admit or deny the allegations, and therefore deny them.

62.     Admit the allegations in ¶62 of the First Amended Complaint.

63.     Admit the allegations in ¶63, based on information and belief.

64.     State the pleading requires private employment data for which these answering defendants cannot publicly provide.

14

65.    Admit Mayor Frey apologized for the result of the execution of the unannounced raid in another jurisdiction executed by a different law enforcement agency with different rules.  Admit the statement attributed to Mayor Frey is accurate.  Deny the remaining allegations.

66.    Admit the chart depicting warrants is accurate.  Admit MPD SWAT applied for and obtained unannounced warrants.  Deny the warrants were executed without announcing presence and purpose, which is not required when executing an unannounced warrant.

67.    Admit the quoted language comes from an email Officer Garrett Parten ("Parten") drafted.  Deny the remaining allegations.

68.    Admit the allegations in ¶68.

**E.    MPD insisted on executing a no-knock search warrant that resulted in Amir's execution.**

69.    Admit the quotation from the law review comment is accurate. Admit there are perils with no knock warrants in a country that allows gun ownership with little gun control.  State affirmatively that there are perils with executing knock and announce warrants as well.  State affirmatively that lawfully obtained no knock warrants are not unlawful intrusions.

70.    Admit the allegations in ¶70.

71.    Admit the allegations in ¶71.

72.    Admit the allegations in ¶72.

73.     Admit the allegations in ¶73, based on information and belief.

74.     Admit the allegations in ¶74.

75.     Are without information sufficient to admit or deny the allegations in ¶75, and therefore deny them.

76.     Are without information sufficient to admit or deny the allegations in ¶76, and therefore deny them.

77.     Deny the allegations in ¶77.

78.     Are without information sufficient to admit or deny the allegations in ¶78, and therefore deny them.

79.     Admit the allegations in ¶79, based on information and belief.

80.     Admit the allegations in ¶80, based on information and belief.

81.     Are without information sufficient to admit or deny the allegations in ¶81, and therefore deny them.

82.     Admit, based on information and belief, the allegations in ¶82.

83.     Admit the allegations in ¶83.

84.     Admit the allegations in ¶84. State affirmatively that in furtherance of seeking SWAT's help, SPPD provided the search warrant application to Lieutenant Thomas Campbell ("Campbell"). Lieutenant Campbell relied upon the information in that search warrant to determine what type of warrant was needed, how to execute it and communicate to his team of the dangers of executing this

search warrant.  From the warrant application, Campbell was informed, and subsequently reasonably relied upon the information. Campbell determined that given the guns and the allegations in the search warrant, it would be unsafe to conduct a knock and announce warrant and stated that MPD SWAT would require a no-knock warrant.

85.     Deny the allegations in ¶85.

86.     Admit the allegations in ¶86.

87.     Admit the allegations in ¶87.

88.     Admit the allegations in ¶88.

89.     Are without information sufficient to admit or deny the allegations in ¶89, and therefore deny them.

90.     Admit the search warrants at Bolero began around 6:40 a.m. on February 2, 2022.

91.     State reasonable surveillance is vague and not susceptible to responsive pleading.  To the extent it is, the allegations are denied.

92.     Are without information sufficient to admit or deny the allegations in ¶92, and therefore they are denied.

93.     Admit the allegations in ¶93. Deny the implicit timeframe.

94.     Admit the allegations in ¶94.

95.     State the allegations are vague as to time and location, and not susceptible to responsive pleading. State affirmatively that Locke grabbed the gun when officers entered the apartment and pointed the gun in Hanneman's direction.

96.     States that ¶96 alleges a vague and incomplete hypothetical not susceptible to responsive pleading.  To the extent it is, it is denied.

97.     Admit that the study of 200 officers found that 107 of those officers disfavored using gun locks.  Are without information sufficient to admit or deny whether this particular study of 200 officers considered whether the officers were sleeping, and therefore deny it.

98.     Admit the allegations in ¶98.

99.     Admit the allegations in ¶99.

100.    State the allegations are vague and not susceptible to responsive pleading.  To the extent they are, they are denied. State affirmatively that the new policy required officers to announce their presence and purpose prior to crossing the threshold, which is not required in executing unannounced warrants.

101.    Admit the allegations in ¶101.

102.    Admit the allegations in ¶102.

103.    Admit the allegations in ¶103.

104.    Deny the allegations in ¶104.

18

105.   Deny the allegations in ¶105.

106.   Deny the allegations in ¶106.

107.   "State the phrase "barreled in" is vague and not susceptible to responsive pleading.  To the extent it is, it is denied.  Admit the remaining allegations in ¶107.

108.   Deny the allegations in ¶108.

109.   Deny the allegations in ¶109 as vague.

110.   Admit the allegations in ¶110.

111.   Deny the allegations in ¶111.

112.   Deny the allegations in ¶112.

113.   Admit Locke had the gun in his hand. Are without information sufficient to admit or deny the length of time Locke held the gun in his hand. And therefore deny it.

114.   Admit Locke's finger was off of the trigger at one point in time.  Deny the allegations in ¶114.

115.   Deny the allegations in ¶115.

116.   Admit the allegations in ¶116.

117.   Deny the allegations in ¶117.

118.   Deny the allegations in ¶118.

119.   Deny the allegations in ¶119.

120.    Admit Hanneman shot at Locke three times. Deny the remaining allegations.

121.    Admit Hanneman shot at Locke approximately 8 seconds after SWAT entered the apartment. Admit Sgt. Carlson kicked the couch.  Deny the remaining allegations.

122.    Admit the allegations that no officer told Locke to "drop the handgun" before Hanneman shot Locke. Deny the remaining allegations.

123.    Admit no officer warned Locke that he would be shot if he did not drop the gun. Deny the remaining allegations.

124.    Deny the allegations in ¶124.

125.    Admit Hanneman shot Locke three times. Deny the allegations in ¶125.

126.    Admit the allegations in ¶126.

127.    Admit Locke moved away from Hanneman.  Deny the remaining allegations.

128.    Deny the allegations in ¶128.

129.    Deny the allegations in ¶129.

130.    Deny the allegations in ¶130.

131.    Deny the allegations in ¶131.

132.    Deny the allegations in ¶132.

133.   Deny the allegations in ¶133.

134.   Are without information sufficient to admit or deny the allegations in ¶134, and therefore deny them.

135.   Deny the allegations in ¶135.

136.   Deny the allegations in ¶136.

137.   Deny the allegations in ¶137.

138.   Deny the allegations in ¶138.

139.   Deny the allegations in ¶139.

140.   Admit the allegations in ¶140.

141.   Admit the allegations in ¶141.

142.   Admit only Hanneman shot Locke.  Deny the remaining allegations in ¶142.

143.   Admit the allegations in ¶143.

144.   Admit the allegations in ¶144.

145.   Admit the allegations in ¶145.

**F.     The Aftermath**

146.   Admit the allegations in ¶146. State affirmatively that specifically Mayor Frey announced a moratorium on requesting no-knock warrants and announced a requirement that officers knock and announce and wait prior to entering a dwelling.

147.    Deny the allegations in ¶147.

148.    Admit the allegations in ¶148.

149.    Deny the breaking of windows was unreasonable.   Admit the remaining allegations.

150.    Are without information sufficient to admit or deny the allegations in ¶150, and therefore deny them.

151.    Admit the allegations in ¶151.

152.    Admit the allegations in ¶152.

153.    Admit the allegations in ¶153.

154.    Are without information sufficient to admit or deny the allegations in ¶154, and therefore deny them.

155.    State the term "disproportionately is vague and not susceptible to responsive pleading. To the extent responsive pleading is required, it is denied. State affirmatively that more no-knock warrants were served on Black people in Minneapolis than other races within a given time period.

156.    Deny the allegations in ¶156.

157.    Admit the allegations in ¶157.

158.    Admit the findings concluded in the allegations in ¶158.

159.    Admit the findings stated in the allegations in ¶159.

160.    Admit the findings stated in the allegations in ¶160.

161.   Admit the findings stated in the allegations in ¶161.

162.   Admit the allegations in ¶162.

163.   Admit the allegations in ¶163.

**G.   The Department of Justice Investigation.**

164.   Admit the allegations in ¶164.

165.   Admit the allegations in ¶165.

166.   Admit the allegations in ¶166.

167.   Deny that DOJ findings are relevant here. Admit DOJ states that it found the remaining allegations in ¶167.

168.   Admit that the DOJ stated the quoted in ¶168.

169.   Admit that the DOJ stated the quoted language in ¶169.

170.   Admit that the DOJ stated the quoted language in ¶170.

171.   Admit that the DOJ stated the quoted language as stated in ¶171.

172.   Admit that the DOJ stated the quoted language as stated in ¶172.

173.   Admit that the DOJ stated the quoted language in ¶173.

174.   Admit that the DOJ stated the quoted language in ¶174.

175.   Admit that the DOJ stated the quoted language in ¶175.

176.   Admit the allegations in ¶176.

177.   Admit the DOJ stated the quoted language in ¶177.

178.   Admit the DOJ stated the quoted language in ¶178.

23

179.    Admit the DOJ stated the quoted language in ¶179.

180.    Admit the DOJ stated the quoted language in ¶180.

181.    Admit the DOJ stated the quoted language in ¶181.

182.    Admit the DOJ stated the quoted language in ¶182.

183.    Admit the DOJ stated the quoted language in ¶183.

184.    Admit the DOJ stated the quoted language in ¶184.

185.    State that ¶185 is not susceptible to responsive pleading.

### COUNT ONE
### 42 U.S.C. § 1983 Fourth and Fourteenth Amendment Violations
*Plaintiffs v. Hanneman*

186.    Defendants re-answer and incorporate by reference each previous response to allegations previously answered in this Answer to Plaintiffs' First Amended Complaint as if fully set forth herein.

187.    Admit Locke had rights under the Fourth Amendment; deny the force used on him was unreasonable or excessive.

188.    Admit Hanneman acted under color of law. Deny the remaining allegations.

189.    State the allegations call for a legal conclusion. To the extent responsive pleading is required, they are denied.

190.    State the allegations call for a legal conclusion. To the extent responsive pleading is required, they are denied.

24

191.   Admit Plaintiffs have standing to sue. Deny the remaining allegations.

192.   State the allegations call for a legal conclusion. To the extent responsive pleading is required, they are denied.

193.   Deny the allegations in ¶193.

### COUNT TWO
### 42 U.S.C. § 1983 *Monell* Liability
*Plaintiffs v. Minneapolis*

194.   Defendants re-answer and incorporate by reference each previous response to allegations previously answered in this Answer to Plaintiffs' First Amended Complaint as if fully set forth herein.

195.   State the allegations call for a legal conclusion. To the extent responsive pleading is required, they are denied.

196.   Deny the allegations in ¶196.

197.   State the allegations call for a legal conclusion. To the extent responsive pleading is required, they are denied.

198.   State the allegations call for a legal conclusion. To the extent responsive pleading is required, they are denied.

199.   Admit Plaintiffs have standing to sue.  Deny the remaining allegations.

200.   Deny the allegations in ¶200.

## COUNT THREE
### 42 U.S.C. § 1983 *Canton* Liability
### *Plaintiffs v. Minneapolis*

201.   Defendants re-answer and incorporate by reference each previous response to allegations previously answered in this Answer to Plaintiffs' First Amended Complaint as if fully set forth herein.

202.   State the allegations call for a legal conclusion and are therefore not susceptible to responsive pleading.  To the extent it requires a response it is denied.

203.   State the allegations call for a legal conclusion and are therefore not susceptible to responsive pleading.  To the extent it requires a response it is denied.

204.   State the allegations call for a legal conclusion and are therefore not susceptible to responsive pleading.  To the extent it requires a response it is denied.

205.   State the allegations call for a legal conclusion and are therefore not susceptible to responsive pleading.  To the extent it requires a response it is denied.

206.   Admit Plaintiffs have standing to sue.   Deny the remaining allegations.

207.   Deny the allegations in ¶207.

**COUNT FOUR**
**State Law Wrongful Death – Minn. Stat. § 573.02**
*Plaintiffs v. Hanneman and Minneapolis*

208.    Defendants re-answer and incorporate by reference each previous response to allegations previously answered in this Answer to Plaintiffs' First Amended Complaint as if fully set forth herein.

209.    State the allegations call for a legal conclusion and are therefore not susceptible to responsive pleading.  To the extent it requires a response it is denied.

210.    State the allegations call for a legal conclusion and are therefore not susceptible to responsive pleading.  To the extent it requires a response it is denied.

211.    State the allegations call for a legal conclusion and are therefore not susceptible to responsive pleading.  To the extent it requires a response it is denied.

212.    State the allegations call for a legal conclusion and are therefore not susceptible to responsive pleading.  To the extent it requires a response it is denied.

213.    Admit Plaintiffs have standing to sue.   Deny the remaining allegations.

214.    State the allegations call for a legal conclusion and are therefore not susceptible to responsive pleading.  To the extent it requires a response it is denied.

215.    State the allegations call for a legal conclusion and are therefore not susceptible to responsive pleading.  To the extent it requires a response it is denied.

## PRAYER FOR RELIEF

The request for relief is not subject to a responsive pleading. To the extent that the prayer for relief can be construed to contain allegations against the Defendants, the allegations are denied. Defendants expressly deny that the Plaintiffs are entitled to any relief against the Defendants.

## AFFIRMATIVE DEFENSES

1.      The First Amended Complaint fails to state a claim upon which relief can be granted.

2.      The actions and use of force by Minneapolis Police Department officers and Defendant Mark Hanneman were objectively reasonable, commanded or authorized by law, and they are immune from liability under the doctrines of qualified immunity, official immunity or other legal immunity.

3.      The City officers and Defendant Hanneman were operating under a lawful warrant and both the State Attorney General and Hennepin County Attorney declined to bring criminal charges against Hanneman.

4.      The alleged use of force referenced in the First Amended Complaint was privileged under the common law and/or under Minn. Stat. §§ 609.06 and 609.066.

5.      Defendants' actions are permitted by local law, state statute, federal law, or other applicable law.

6.      Defendants are not liable for punitive damages, if any, under state and federal law.

7.      Plaintiffs' injuries or damages, if any, were caused, contributed to, or brought about by Plaintiffs' own intentional, illegal, and/or negligent acts or the acts of others over whom Defendants exercised no right or dominion or control and for whose actions Defendants are not legally responsible.

8.      Plaintiffs failed to mitigate damages, if any.

9.      City Defendants' actions or the actions of MPD officers at the relevant time were justified by the doctrines of self-defense or the defense of others.

10.     Plaintiffs are not entitled to recover attorneys' fees or any other costs or expenses in this action.

11.     The Complaint is barred by the doctrine of execution of a public duty.

12.     City Defendants' actions or the actions of MPD officers at the relevant time were justified by the actions of others over whom the City Defendants have no control.

13.     Plaintiffs had knowledge, or in the exercise of reasonable care should have had knowledge, of each of the risks about which plaintiffs complain; further plaintiffs voluntarily assumed any risk inhered in the situation that gave rise to the Complaint.

14.     Plaintiffs' First Amended Complaint against the City is contrary to public policy.

15.     Defendant City alleges that the City of Minneapolis, through its policy-making officials, has no historical policy of deliberate indifference to excessive force and that all training and policies fulfill or exceed constitutional requirements.

16.     The policies, procedures and customs authorized and permitted by the City Defendants were fair and legal in both form and operation.

17.     The City of Minneapolis is municipality, and therefore is immune from liability for claims pursuant to 42 U.S.C. § 1983 that are based upon the concept of respondeat superior.

18.     Plaintiffs' claim also may be barred by affirmative defenses contemplated by Rule 12.02 of the Minnesota Rules of Civil Procedure which are not specifically set forth above.  The extent to which the First Amended Complaint's claims may be barred by one or more of said affirmative defenses cannot be determined at this time.  Pending further discovery, Defendants allege and incorporate all such affirmative defenses set forth in Minn. R. Civ. P. 12.02.

**WHEREFORE**, Defendants pray for an Order of this Court as follow:

1.     Dismissing Plaintiffs' First Amended Complaint on the merits and with prejudice in its entirety;

30

2.      Awarding Defendants all reasonable costs, disbursements and attorneys' fees to the fullest extent allowed by law; and

3.      For such other and further relief as this Court deems appropriate.

## ACKNOWLEDGMENT

Defendants, through their attorneys, acknowledge that sanctions may be imposed under Minn. Stat. § 549.211, if the statute is found to apply to claims asserted in this matter.

Dated:  August 25, 2023                          KRISTYN ANDERSON
                                                 City Attorney
                                                 By

                                                 */s/ Tracey N. Fussy*
                                                 TRACEY N. FUSSY (#311807)
                                                 MARK ENSLIN (#338813)
                                                 REBEKAH M. MURPHY (#392912)
                                                 Assistant City Attorneys
                                                 Minneapolis City Attorney's Office
                                                 350 South Fifth Street, Room 210
                                                 Minneapolis, MN 55415
                                                 (612) 673-2254
                                                 (612) 673-5132
                                                 (612) 673-2017
                                                 tracey.fussy@minneapolismn.gov
                                                 mark.enslin@minneapolismn.gov
                                                 rebekah.murphy@minneapolismn.gov

                                                 *Attorneys for Defendants*