# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2612
_____

Karen Wells, as co-trustees for the next of kin of Amir Rahkare Locke, deceased; Andre Locke, as co-trustees for the next of kin of Amir Rahkare Locke, deceased,

*Plaintiffs - Appellees*,

v.

Mark Hanneman, in his individual capacity as a Minneapolis police officer; City of Minneapolis,

*Defendants - Appellants*.

------------------------------

Minnesota Police and Peace Officers Association,

*Amicus on Behalf of Appellant(s)*.

_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 18, 2025
Filed: July 18, 2025
_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.
_____

COLLOTON, Chief Judge.

This is an interlocutory appeal from an order of the district court denying a police officer's motion for judgment on the pleadings based on qualified immunity. We conclude that this court lacks jurisdiction, and therefore dismiss the appeal.

I.

The case arises from a police shooting during execution of a no-knock search warrant on an early morning in February 2022. A SWAT team from Minneapolis entered an apartment in search of a murder suspect. When officers entered, they found Amir Locke, the suspect's cousin, asleep on a living room couch. Given the posture of the case, we recite the facts as set forth in the pleadings.

Locke was lying on a couch that was "straight ahead after entering the door to the apartment." About six seconds after the SWAT team entered the apartment, Sergeant Carlson kicked the couch as another officer yelled, "Get on the ground." Locke, draped in a blanket, fell off the couch and onto the ground. As he began to stand, Locke grabbed for a handgun that was placed near the couch. Officer Hanneman approached Locke and yelled, "Show me your hands."

Locke began to comply by lowering the handgun's barrel to the ground and raising his left hand to the side of his head. Before Locke could fully comply, Officer Hanneman fired three shots that hit Locke. Hanneman then announced, "He's got a gun." During the encounter, Locke allegedly kept his finger off the trigger, pointed the handgun toward the ground, and "never raised the handgun in a threatening manner in the direction of any officer or other person." The shooting occurred eight seconds after the SWAT team entered the apartment. Locke died within fifteen minutes of the shooting.

Karen Wells and Andre Locke, co-trustees of Locke's next of kin, brought this action against Officer Hanneman and the City of Minneapolis under 42 U.S.C. § 1983 and Minnesota's wrongful death statute. The plaintiffs alleged that Hanneman violated Locke's Fourth Amendment right to be free from unreasonable seizures. They also alleged that the City failed adequately to train its officers and failed "to correct a number of persistent and widespread unconstitutional practices and customs" that led to Locke's death. Finally, they alleged that Officer Hanneman and the City violated Minnesota's wrongful death statute by engaging in wrongful acts and omissions that caused Locke's death.

Hanneman and the City answered the complaint and submitted body camera footage from the officers. Hanneman moved for judgment on the pleadings on the ground that he was entitled to qualified immunity. *See* Fed. R. Civ. P. 12(c). Hanneman argued that the amended complaint and body camera footage establish that he "had probable cause to believe that Locke posed a threat of death or serious physical harm to himself or other officers." The officer cited body camera footage for the proposition that "Locke raised the gun and pointed the gun in Hanneman's direction and near the direction of other police officers in the apartment."

The district court denied the motion. The court concluded that the body camera footage did not contradict the factual allegations in the complaint. Specifically, the court observed that "the body-worn-camera videos provide dim, unclear images of the incident's critical moments." After a "careful review of the videos," the court determined that Locke's actions were "obscured by darkness or the officers themselves."

Based on the uncontradicted allegations in the complaint, the court assumed that Locke lowered the barrel and muzzle of his firearm toward the ground, began raising his left hand toward his head, attempted to comply with officers' commands, and never raised the gun in a threatening manner in the direction of any officer. On

those assumed facts, the court concluded that the complaint plausibly stated a claim that Hanneman's use of deadly force violated Locke's clearly established rights. The court also denied the defendants' motion to dismiss the remaining claims.

Hanneman and the City noticed an appeal, and the plaintiffs moved to dismiss the appeal for lack of jurisdiction. The plaintiffs argue that the appeal challenges the facts assumed by the district court and does not raise a purely legal issue over which this court has jurisdiction.

II.

In an appeal from the denial of qualified immunity, we have jurisdiction "to decide the purely legal issue of whether the facts alleged by the plaintiff are a violation of clearly established law." *Raines v. Counseling Assocs., Inc.*, 883 F.3d 1071, 1074 (8th Cir. 2018). In making that determination, the court is "constrained by the version of the facts that the district court assumed or likely assumed in reaching its decision." *Thompson v. Murray*, 800 F.3d 979, 983 (8th Cir. 2015). We ordinarily lack jurisdiction to decide "which facts a party may, or may not, be able to prove at trial." *Johnson v. Jones*, 515 U.S. 304, 313 (1995). "There is one exception to such a jurisdictional limitation on our review: we may reject the district court's factual findings to the extent that they are 'blatantly contradicted by the record.'" *Wallace v. City of Alexander*, 843 F.3d 763, 767 (8th Cir. 2016) (quoting *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014)); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

The defendants' principal argument on appeal is that the body camera footage blatantly contradicts the district court's assumed fact that Locke did not raise the gun in the direction of the officers. The defendants claim that the footage clearly depicts Locke raising and pointing the gun in the direction of Officer Hanneman or other officers.

-4-

After reviewing the body camera footage, we conclude that the videos do not blatantly contradict the assumed fact that Locke did not raise the gun in the direction of officers. We agree with the district court that Locke's actions "are obscured by darkness or the officers themselves," and that "the body-worn-camera videos provide dim, unclear images of the incident's critical moments."

The defendants assert that a still-image taken from Officer Carlson's body camera footage shows Locke pointing the gun at officers. The image shows the barrel of a gun appearing from under Locke's blanket, with the barrel angled close to horizontal. Officer Hanneman is located to the right of Locke, near the corner of the couch. But the image does not show definitively what direction the barrel is pointing or whether officers are located in the direction of the barrel.

Because the district court's assumed facts are not blatantly contradicted by the record, this court does not have jurisdiction to address Hanneman's remaining arguments on appeal. Each of the arguments would require the court to reject the plaintiffs' alleged facts and agree with Hanneman that Locke raised his gun in the direction of officers. Because we lack jurisdiction to address whether the evidence is sufficient to support the allegations in the complaint, the appeal must be dismissed. See Evans v. Krook, 106 F.4th 790, 792 (8th Cir. 2024) (per curiam).

The Minnesota Police and Peace Officers Association, as *amicus curiae*, argues that even if the videos do not establish that Locke pointed the gun in the direction of the officers, Officer Hanneman was still entitled to qualified immunity. But the defendants did not raise this argument in the district court or on appeal. We therefore decline to consider it. See FTC v. Phoebe Putney Health Sys., Inc., 568 U.S. 216, 226 n.4 (2013); Owen v. Bristol Care, Inc., 702 F.3d 1050, 1053 n.1 (8th Cir. 2013). Because we lack jurisdiction to consider Hanneman's claim for qualified immunity, we also do not consider the City's interlocutory appeal on the claims alleging

municipal liability or the defendants' interlocutory appeal concerning the state-law claim. *See Shockency v. Ramsey County*, 493 F.3d 941, 952 (8th Cir. 2007).

The appeal is dismissed.

_____